Case 3:18-cv-00080 Document 29 Filed on 02/21/19 in TXSD Page 1 of 7

United States District Court
Southern District of Texas
**ENTERED**
February 21, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| MARY BETH CLAWSON, *et al*, | § § § | |
| Plaintiffs, | § | |
| VS. | § § | CIVIL ACTION NO. 3:18-CV-00080 |
| OCWEN LOAN SERVICING, LLC, *et al*, | § § § | |
| Defendants. | § § | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is the Motion to Dismiss the Plaintiffs' Second Amended Complaint filed by the Defendants, Ocwen Loan Servicing LLC ("Ocwen"), the Bank of New York Mellon ("Mellon"), and Power Default Services, Inc. ("Power") (collectively, the "Defendants"). Dkt. 18. Having reviewed the motion, the response, the reply, and the applicable law, the motion is **GRANTED IN PART AND DENIED IN PART**.

### **Factual Background and Proceedings**

In 2004, Plaintiff, Mary Beth Clawson ("Clawson"), obtained a mortgage loan for $625,250.00, which was secured by a deed of trust on a property that she owned in Bacliff, TX. Dkt. 19 at 1. Sometime thereafter, Clawson defaulted on the mortgage loan. *See Clawson v. GMAC Mortg.*, No. 3:12-CV-00212, 2013 WL 1948128, 2013 U.S. Dist. LEXIS 66422, at *2 (S.D. Tex. May 9, 2013). Since then, Clawson and her son John Riddle (collectively, the "Clawsons") have been involved in a series of lawsuits against

the various companies that have serviced their mortgage alleging claims for property damage[1] and wrongful foreclosure.[2]

This suit, like the ones that have preceded it, also stems from an attempted foreclosure of the Clawsons' property. In 2012, Ocwen, the loan servicer at the time, provided the Clawson's "with [a] notice of acceleration of the debt" on their mortgage loan. *Clawson*, 2013 U.S. Dist. LEXIS 66422, at *2. Ocwen later abandoned its attempt to accelerate the Clawsons' mortgage debt in 2014 by "requesting only the past-due amounts and not the full balance of the accelerated loan." Dkt. 18 at 5.

Both the Clawsons and Ocwen entered in to loan modification discussions in April of 2016. *See* Dkt. 18 at 5; Dkt. 17 at 5-6. In those meetings, the Clawsons allege that they were told that if they agreed to pay "three monthly installments of $2,848.76, their previous 2004 loan would be modified and they would owe no more than the unpaid principal amount of $625,250.00 with a 40-year [amortization] bearing interest at a fixed interest rate of 3.125% per annum." Dkt. 17 at 6; *See also* Dkt. 17, Exh 6 (for a copy of the terms of the modification, as understood by the Clawsons). After beginning to pay these installments, the Clawsons were informed that the amounts they had paid were being applied to their outstanding balance under the 2004 loan—rather than serving as consideration for a loan modification. *See* Dkt. 17 at 7; *See* Dkt. 18 at 5. Upon receiving

---

[1] *Clawson et al v. GMAC Mortgage, LLC, et al*, Cause No. 09-CV-0130 (10th D. Ct. Galveston Cnty. 2009) (lawsuit by Mary Beth Clawson and John Riddle against GMAC Mortgage, LLC, American Field Services, and Texas Fair Plan Association for relief from damage that allegedly occurred to their property).
[2] *Clawson et al v. GMAC Mortgage, LLC f/k/a GMAC Mortgage Corporation et al*, 3:12-cv-00212 (S.D. Tex. 2012) (lawsuit by Mary Beth Clawson and John Riddle against GMAC Mortgage, LLC and Executive Trustee Services, LLC seeking declaratory and injunctive relief related to a foreclosure, as well as monetary relief based on a usury claim).

this information, the Clawsons ceased payment of the loan modification installments altogether. *See* Dkt. 17 at 7.

Ocwen then transmitted the Clawsons a "notice of substitute trustee sale [on] February 1, 2018" to be carried out by Power, the substitute trustee. Dkt. 1-1 at 28. Eight days later, Ocwen provided another "acceleration of [] debt" to the Clawsons on February 9, 2018. Dkt. 1-1 at 26. In response, the Clawsons initiated this suit against Ocwen, Power, and the Bank of Mellon[3] for novation, violation of the statute of limitations on foreclosures, usury, and violations of the Federal Debt Collection Practices Act ("FDCPA"). For the reasons discussed below, the Court grants in part and denies in part the Defendants' motion to dismiss.

## Standard of Review

When reviewing a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6), all "well-pleaded facts are to be accepted as true and viewed in the light most favorable to [the plaintiffs.]" *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 510 (5th Cir. 2016). "To survive a motion to dismiss, a complaint need not contain detailed factual allegations; rather, it need only allege facts sufficient to state a claim for relief that is plausible on its face." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018) (quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[3] The Bank of New York Mellon appears to be a party in this suit because it acquired an interest in Mrs. Clawson's mortgage. Dkt. 19 at 1-2.

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Importantly, "a complaint may proceed even if recovery is very remote and unlikely, so long as the alleged facts raise a right to relief above the speculative level." *Littell*, 894 F.3d at 622.

## Analysis

### a. Novation

The Clawsons allege that they have asserted a "novation" claim against the Defendants and that because the "Movants nowhere mention the [novation] claim [in their motion to dismiss]…it is not subject to the motion and may not be dismissed." Dkt. 19 at 6. However, "[n]ovation, or the substitution of a new agreement in place of an existing agreement between the same parties, is an affirmative defense to a claim for breach of contract"—not a claim that can be independently asserted by a plaintiff. *Id.* at 7 (citing *Fulcrum Central v. Autotester, Inc.*, 102 S.W.3d 274, 277-278 (Tex. App.—Dallas 2003, no pet.). The Defendants' have not filed a counter-claim for breach of contract in this case. Therefore, the Clawsons cannot raise the affirmative defense of novation here. Accordingly, the Clawsons novation claim must be dismissed. *See Williams v. Wells Fargo Bank, N.A.*, 560 F. App'x 233, 237 (5th Cir. 2014).

### b. Violation of the Statute of Limitations on Foreclosures

Next, the Clawsons allege that the Defendants attempted foreclosure of their property was illegal because it was "barred by limitations and thus void." Dkt. 17 at 8. The Court disagrees.

Defendants' foreclosure is not barred by the applicable statute of limitations. Under Texas law, "[a] sale of real property under a power of sale in a mortgage or deed

of trust that creates a real property lien must be made not later than four years after the day the cause of action accrues." Tex. Civ. Prac. & Rem. Code § 16.035(b) (2017). In a case, like this one, where "a note or deed of trust secured by real property contains an optional acceleration clause…the action accrues only when the holder actually exercises its option to accelerate." *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001) (citing *Hammann v. H.J. McMullen & Co.*, 62 S.W.2d 59, 61 (Tex. 1933). However, if at any time "the acceleration is abandoned before the limitations period expires, the contract is restored to its original condition thereby restoring the note's original maturity date." *Ocwen Loan Servicing, L.L.C. v. REOAM, L.L.C.*, No. 18-40278, 2018 WL 5930610, 2018 U.S. App. LEXIS 32129, at *4-5 (5th Cir. 2018). Importantly, a lender can abandon an acceleration of debt by putting the borrower on notice of its abandonment by requesting payment on less than the full amount of the accelerated loan. *See Boren v. United States Nat'l Bank Ass'n*, 807 F.3d 99, 106 (5th Cir. 2015). "In other words, if the noteholder informs the borrower that the loan can be brought current by payment of the amount due under the original terms of the loan rather than the full accelerated amount, such notice is sufficient to unequivocally manifest an intent to abandon the previous acceleration meaning that the limitations period triggered by the acceleration ceases to run." *Ocwen Loan Servicing, L.L.C.*, 2018 U.S. App. LEXIS 32129, at *5.

Here, the Clawsons allege that the Defendants 2018 foreclosure is barred by the statute of limitations, because Ocwen accelerated the Clawsons' debt more than four years ago and any attempt to abandon this acceleration was ineffective because it was

done "unilaterally." Dkt. 17 at 7 (for the Clawsons' argument on the violation of the statute of limitations); *See* Tex. Civ. Prac. & Rem. Code § 16.035(b) (for four year statute of limitations on foreclosure). However, under federal law, a notice by a noteholder "that [a] loan can be brought current by payment of the amount due under the original terms of the loan rather than the full accelerated amount" effectuates an abandonment—even if it was done unilaterally. *See Ocwen Loan Servicing, L.L.C.*, 2018 U.S. App. LEXIS 32129, at *5. After accelerating the Clawsons' debt in 2012, Ocwen sent such a notice to the Clawsons in 2014. *See* Dkt. 18 at 5. Therefore, the statute of limitations for foreclosure in this matter was reset in 2014. *See Boren*, 807 F.3d at 106 (5th Cir. 2015) ("A lender waives its earlier acceleration when it put[s] the debtor on notice of its abandonment...by requesting payment on less than the full amount of the loan.") (quotations omitted). Accordingly, Ocwen's 2018 attempt to foreclose on the Clawsons' property is not barred by the statute of limitations, and the Clawsons' claim for violation of the statute of limitations must be dismissed.

    **c. Usury**

The Clawsons also allege that the Defendants have committed usury, because their $600,000 loan accrued interest charges of $100,000 over a six month period. Dkt. 17 at 9. The Court does not find that the Clawsons have alleged enough facts to state a claim for relief on this ground.

Under Texas law, a usury claim has three elements: "(1) a loan of money; (2) an absolute obligation to repay the principal; and (3) the exaction of a greater compensation than allowed by law for the use of the money by the borrower." *First Bank v. Tony's*

*Tortilla Factory*, 877 S.W.2d 285, 287 (Tex. 1994). Nowhere in their claim do the Clawsons allege facts satisfying the third element of a usury claim. Specifically, the Clawsons do not plead facts alleging that they "actually paid under the usurious rate," which is "an essential element [of the exaction prong] to a usury claim." *Johnson v. Citigroup Mortg. Loan Tr. Inc.*, Civil Action No. 5:16-cv-1114-RCL, 2017 WL 3337268, 2017 U.S. Dist. LEXIS 123411, at *38 (W.D. Tex. 2017). Accordingly, the Clawsons claim for usury must be dismissed. *See id.*

### d. Federal Debt Collection Practices Act

Finally, the Clawsons have alleged that the Defendants violated the FDCPA. Dkt. 17 at 1. The Court finds that the Clawsons have alleged facts, if true, to state a claim for relief under § 1692f of this act. *See* 15 U.S.C. § 1692f. Therefore, Ocwen's motion to dismiss is denied with respect to this claim.

### Conclusion

For the foregoing reasons, the Court **GRANTS** the Defendants' motion to dismiss **IN PART** and **DENIES THE MOTION IN PART**. Accordingly, the Court **ORDERS** that the Clawsons' claim for novation and violation of the statute of limitations be **DISMISSED WITH PREJUDICE**. Additionally, the Court **ORDERS** that the Clawsons' claim for usury be **DISMISSED WITHOUT PREJUDICE**. The Clawsons claim for a violation of the FDCPA will remain in this case.

SIGNED at Galveston, Texas, this 21st day of February, 2019.

George C. Hanks Jr.
United States District Judge